# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 23-2053V

|  |  |
|---|---|
| RHONDA BRUXVOORT,<br><br>                Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: August 14, 2025 |

*Laura Levenberg*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Dorian Hurley*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION AWARDING DAMAGES[1]

On November 30, 2023, Rhonda Bruxvoort filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that that she suffered a shoulder injury related to vaccine administration ("SIRVA"), a defined Table injury, after receiving an influenza ("flu") vaccine on September 30, 2022.[3] Petition at 1, ¶ 1. After Respondent conceded

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

[3] The same day, Petitioner also received a tetanus, diphtheria, acellular pertussis ("Tdap") vaccine in her opposing, right deltoid. Ex. 1 at 1 (vaccine record). Although she experienced some initial pain in her right arm, she is not seeking compensation related to the administration of that Tdap vaccine. *See* Ex. 2 at 66 (complaining of bilateral shoulder pain at her initial visit on October 12, 2022).

entitlement, the parties were unable to resolve damages on their own,[4] so I ordered briefing on the matter.

For the reasons described below, I find that Petitioner is entitled to an award of damages in the amount of **$65,061.27**, **representing $65,000.00 for actual pain and suffering, plus** $61.27 **for past unreimbursable expenses (mileage reimbursement).**

## I.     Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages

---

[4] The month after I determined Petitioner was entitled to compensation, the parties informed me that they had reached an impasse in their damages discussions and requested that I set a briefing schedule. Status Report, filed July 18, 2024, ECF No. 16.

in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims. *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. *Graves v. Sec'y of Health & Hum. Servs.,* 109 Fed. Cl. 579 (Fed. Cl. 2013). *Graves* maintained that to do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id.* at 590. Instead, *Graves* assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id.* at 595. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap. Although *Graves* is not controlling of the outcome in this case, it provides reasoned guidance in calculating pain and suffering awards.

## II. Prior SIRVA Compensation Within SPU[5]

### A. Data Regarding Compensation in SPU SIRVA Cases

SIRVA cases have an extensive history of informal resolution within the SPU. As of July 1, 2025, 4,983 SPU SIRVA cases have resolved since the inception of SPU more than ten years before. Compensation has been awarded in the vast majority of cases (4,817), with the remaining 166 cases dismissed.

2,744 of the compensated SPU SIRVA cases were the result of a ruling that the petitioner was entitled to compensation (as opposed to an informal settlement), and therefore reflect full compensation.[6] In only 310 of these cases, however, was the amount

---

[5] All figures included in this decision are derived from a review of the decisions awarding compensation within the SPU. All decisions reviewed are, or will be, available publicly. All figures and calculations cited are approximate.

[6] The remaining 2,073 compensated SIRVA cases were resolved via stipulated agreement of the parties without a prior ruling on entitlement. These agreements are often described as "litigative risk" settlements, and thus represent a reduced percentage of the compensation which otherwise would be awarded. Because multiple competing factors may cause the parties to settle a case (with some having little to do with the merits of an underlying claim), these awards from settled cases do not constitute a reliable gauge of the appropriate amount of compensation to be awarded in other SPU SIRVA cases.

3

of damages determined by a special master in a reasoned decision.[7] As I have previously stated, the written decisions setting forth such determinations, prepared by neutral judicial officers (the special masters themselves), provide the most reliable guidance in deciding what similarly-situated claimants should also receive.[8]

The data for all categories of damages decisions described above reflect the expected differences in outcome, summarized as follows:

|  | **Damages Decisions by Special Master** | **Proffered Damages** | **Stipulated Damages** | **Stipulated[9] Agreement** |
|---|---|---|---|---|
| **Total Cases** | *310* | *2,403* | *31* | *2,073* |
| **Lowest** | $25,000.00 | $4,000.00 | $37,013.60 | $1,000.00 |
| **1st Quartile** | $67,020.04 | $60,000.00 | $90,000.00 | $30,000.00 |
| **Median** | **$91,290.04** | **$79,444.74** | **$115,772.83** | **$50,000.00** |
| **3rd Quartile** | $125,000.00 | $106,293.26 | $161,501.20 | $75,000.00 |
| **Largest** | $1,569,302.82 | $1,845,047.00 | $1,500,000.00 | $550,000.00 |

### B.  Pain and Suffering Awards in Reasoned Decisions

In the 310 SPU SIRVA cases in which damages were determined via reasoned decision, compensation for a petitioner's actual or past pain and suffering varied from $25,000.00 to $215,000.00, with $90,000.00 as the median amount. Only ten of these cases involved an award for future pain and suffering, with yearly awards ranging from

---

[7] The rest of these cases resulting in damages after concession were either reflective of a proffer by Respondent (2,403 cases) or stipulation (31 cases). Although all proposed amounts denote *some* form of agreement reached by the parties, those presented by stipulation derive more from compromise than instances in which Respondent formally acknowledges that the settlement sum itself is a fair measure of damages.

[8] Of course, even though *all* independently-settled damages issues (whether by stipulation/settlement or proffer) must still be approved by a special master, such determinations do not provide the same judicial guidance or insight obtained from a reasoned decision. But given the aggregate number of such cases, these determinations nevertheless "provide *some* evidence of the kinds of awards received overall in comparable cases." *Sakovits v. Sec'y of Health & Hum. Servs.*, No. 17-1028V, 2020 WL 3729420, at *4 (Fed. Cl. Spec. Mstr. June 4, 2020) (discussing the difference between cases in which damages are agreed upon by the parties and cases in which damages are determined by a special master).

[9] Two awards were for an annuity only, the exact amounts which were not determined at the time of judgment.

4

$250.00 to $1,500.00.[10] In one of these cases, the future pain and suffering award was limited by the statutory pain and suffering cap.[11]

In cases with lower awards for past pain and suffering, many petitioners commonly demonstrated only mild to moderate levels of pain throughout their injury course. This lack of significant pain is often evidenced by a delay in seeking treatment – over six months in one case. In cases with more significant initial pain, petitioners usually experienced this greater pain for three months or less. Most petitioners displayed only mild to moderate limitations in range of motion ("ROM"), and MRI imaging showed evidence of mild to moderate pathologies such as tendinosis, bursitis, or edema. Many petitioners suffered from unrelated conditions to which a portion of their pain and suffering could be attributed. These SIRVAs usually resolved after one to two cortisone injections and two months or less of physical therapy ("PT"). None required surgery. Except in one case involving very mild pain levels, the duration of the SIRVA injury ranged from six to 30 months, with most petitioners averaging approximately nine months of pain. Although some petitioners asserted residual pain, the prognosis in these cases was positive.

Cases with higher awards for past pain and suffering involved petitioners who suffered more significant levels of pain and SIRVAs of longer duration. Most of these petitioners subjectively rated their pain within the upper half of a ten-point pain scale and sought treatment of their SIRVAs more immediately, often within 30 days of vaccination. All experienced moderate to severe limitations in range of motion. MRI imaging showed more significant findings, with the majority showing evidence of partial tearing. Surgery or significant conservative treatment, up to 133 PT sessions - occasionally spanning several years, and multiple cortisone injections, were required in these cases. In nine cases, petitioners provided sufficient evidence of permanent injuries to warrant yearly compensation for future or projected pain and suffering.

### III. The Parties' Arguments

Petitioner asserts that she is entitled to a past pain and suffering award of $82,000.00, along with $589.08 in unreimbursed expenses. Petitioner's Brief in Support of Damages ("Brief") at 1, 7, ECF No. 20. Emphasizing the short duration between

---

[10] Additionally, a first-year future pain and suffering award of $10,000.00 was made in one case. *Dhanoa v. Sec'y of Health & Hum. Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018).

[11] *Joyce v. Sec'y of Health & Hum. Servs.*, No. 20-1882V, 2024 WL 1235409, at *2 (Fed. Cl. Spec. Mstr. Feb. 20, 2024) (applying the $250,000.00 statutory cap for actual and future pain and suffering set forth in Section 15(a)(4) before reducing the future award to net present value as required by Section 15(f)(4)(A); *see Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552, 554-55 (Fed. Cir.1994) (requiring the application of the statutory cap before any projected pain and suffering award is reduced to net present value).

vaccination and when she first sought medical treatment (twelve days), PT attended (18 sessions over a three month period), results of an MRI (rotator cuff tendinosis and subacromial bursitis), and three administered cortisone injections, Petitioner favorably compares her circumstances to those of the petitioners in *Russano* and *Mantagas*[12] - cases in which awards of $80,000.00 and $75,000.00, respectively, were issued. Brief at 5-6. She insists, however, that her pain and suffering award should be greater, due to the lesser number of cortisone injections required for those petitioners, as well as the significant treatment delay (almost two months) in *Mantagas. Id.* at 6-7.

Petitioner also seeks a total of $589.08 for past unreimbursed expenses - $505.00 for out-of-pocket medical costs and $84.08 for mileage reimbursement. Brief at 1, 7; *see* Ex. 6, ECF No. 20-2 (supporting documentation for these expenses). The medical expenses are comprised of $126.00 paid to her primary care provider ("PCP") for costs incurred on September 30, 2022, when she received the flu vaccine, and $379.00 paid to CryoSpa Mind & Body Wellness ("CryoSpa") for visits in June and July 2023. Ex. 6 at 1-5, ECF No. 20-2. Other than receipts and billing records showing dates and amounts paid, there are no details regarding these expenses. *See* Ex. 6 at 1-5. And Petitioner filed only a signed declaration[13] addressing the basic Vaccine Act requirements. Ex. 4, ECF No. 1-7. The mileage costs are calculated using the IRS business mileage rates, 65.2 cents for 2022, and 65.5 cents for 2023. *Id.* at 1.

Respondent counters that Petitioner should be awarded $62,500.00 for past pain and suffering, along with $21.16 for mileage expenses. Respondent's Brief in Support of Damages ("Opp.") at 1-2, 15. Characterizing Petitioner's injury as "a mild to moderate SIRVA injury of limited duration," Respondent argues "nothing in the evidence establishes that [P]etitioner's pain ever rose above a moderate level, and she experienced periods of mild to no pain during her approximately seven-month course of conservative treatment." *Id.* at 6. He maintains that Petitioner's SIRVA was similar to those suffered by the petitioners in *Klausen, McKenna,* and *Murray*[14] – decisions featuring past pain and suffering awards ranging from $60,000.00 to $65,000.00. Opp. at 10-11.

---

[12] *Russano v. Sec'y of Health & Hum. Servs.,* No. 18-0392V, 2020 WL 3639804 (Fed. Cl. Spec. Mstr. June 4, 2020); *Mantagas v. Sec'y of Health & Hum. Servs.,* No. 20-1720V, 2023 WL 4573855 (Fed. Cl. Spec. Mstr. June 14, 2023).

[13] The declaration was signed under penalty of perjury as required by 28 U.S.C.A. § 1746. Ex. 4.

[14] *Klausen v. Sec'y of Health & Hum. Servs.,* No. 19-1977V, 2023 WL 2368823 (Fed. Cl. Spec. Mstr. Feb. 2, 2023) (awarding $60,000.00 for past pain and suffering; *Murray v. Sec'y of Health & Hum. Servs.,* No. 18-0534V, 2020 WL 4522483 (Fed. Cl. Spec. Mstr. July 6, 2020) (awarding $65,000.00 for past pain and suffering; *McKenna v. Sec'y of Health & Hum. Servs.,* No. 21-0030V, 2023 WL 5045121 (Fed. Cl. Spec. Mstr. July 7, 2023) (awarding $65,000.00 for past pain and suffering).

Respondent accepts $21.16 as proper reimbursement for medical mileage. Opp. at 8. But he maintains that the out-of-pocket costs and mileage associated with the PCP visit on September 30, 2022, when Petitioner received the flu vaccine, and visits to CryoSpa in June and July 2023, when Petitioner was no longer seeking medical care, should not be paid because they have not been shown to qualify as expenses necessary for the diagnosis or treatment of her SIRVA. *Id.* at 9-10 (citing Section 15(a)(1)(B)(iii)). Criticizing the reasoning followed in prior decisions awarding mileage costs calculated by using the IRS business rate vs. the lesser medical rate, Respondent insists that "[a]pplying the higher rate is also inconsistent with the text of the Vaccine Act which provides compensation for 'actual' expenses which 'resulted from' the vaccine injury." *Id.* at 13 (quoting Section 15(a)(1)(B)). Instead, he "urges [me] to apply the medical rate." Opp. 14.

In their responsive briefs, the parties reiterate their earlier arguments and attempt to distinguish Petitioner's facts and circumstances from the petitioners in the comparable cases cited by the opposing party. ECF Nos. 23-24.

### IV.     Appropriate Compensation for Petitioner's Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact his awareness of his injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

When performing this analysis, I review the record as a whole to include the filed medical records, affidavits, and sworn declarations and all assertions made by the parties in written documents. I consider prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience adjudicating these cases. However, I base my determination on the circumstances of this case.

A thorough review of the medical records reveals that Ms. Bruxvoort suffered a mild SIRVA injury that resolved in approximately eight months after treatment that included three cortisone injections, eighteen sessions of PT over a three-month period, and a course of oral steroids. Ex. 2 at 4-73. An MRI performed in April 2023, revealed rotator cuff tendinitis, a small amount of fluid in the subacromial subdeltoid bursa indicative of bursitis, mild degenerative arthrosis at the AC joint, and a small subchondral cyst adjacent to the superior labrum. *Id.* at 13. It was noted that the AC joint arthritis was likely unrelated to the flu vaccine, and the "small cyst . . . has also probably been there for a long time and [was] probably not the source of [her] pain." *Id.* at 12.

Although Petitioner sometimes reported maximum pain levels of seven to eight, her usual pain levels were mild to moderate – often two or lower with a brief increase to five prior to her second steroid injection in mid-January 2023. Ex. 2 at 28-65. She gained two months of relief following her second injection administered in mid-January 2023, and did not return for further treatment after being prescribed oral steroids in early-May 2023. Although Petitioner seeks the costs associated with several trips to CryoSpa in June and July 2023, she has provided no details regarding the treatments she received.

The SIRVA injuries in the cases proposed by Petitioner, by contrast, were more severe, with greater pain levels and limitations in ROM. *Russano,* 2020 WL 3639804, at *3-4; *Mantagas,* 2023 WL 4573855, at *6-7. Furthermore, the *Russano* petitioner had a history of breast cancer and a lumpectomy which limited her ability to use her opposing, non-injured arm. *Russano,* 2020 WL 3639804, at *2-3. And I found the *Mantagas* petitioner's explanation regarding his reluctance to seek treatment – both initially and later - to be credible. *Mantagas,* 2023 WL 4573855, at *6.

Instead, I find the cases proposed by Respondent – specifically *Murray* and *McKenna* - offer the best comparisons. Both petitioners sought treatment within several weeks of vaccination, required three steroid injections, suffered mild to moderate pain and limitations in ROM, and required no further treatment after approximately one year. *Murray,* 2020 WL 4522483, at *1-2; *McKenna,* 2023 WL 5045121, at *4-7. Although the *Murray* petitioner required a similar amount of PT as in this case, she had pre-existing conditions (related to a car accident and horseback riding) that affected her pain and suffering award. *Murray,* 2020 WL 4522483, at *4-5. And the *McKenna* petitioner never attended PT. 2023 WL 5045121, at *4-5. Still, the *Murray* and *McKenna* petitioners' SIRVAs lasted slightly longer than Petitioner's – twelve and thirteen, as opposed to eight, months. *Murray,* 2020 WL 4522483, at *2; *McKenna,* 2023 WL 5045121, at *6. Thus, I find Petitioner in this case should receive the same past pain and suffering award ($65,000.00).

## V.     Amount of Unreimbursable Expenses

I have previously addressed the issue of the appropriate rate to use when calculating mileage expenses, and have in this case, as before, applied the higher IRS business rate.[15] Although I am willing to revisit the issue in a future matter if presented with compelling evidence, I see no reason to deviate from these prior, albeit non-binding,

---

[15] *See* e.g., *Evans v. Sec'y of Health & Hum. Servs.,* No. 22-1125V, 2025 WL 2303787 (Fed. Cl. Spec. Mstr. July 7, 2025); *Walter v. Sec'y of Health & Hum. Servs.*, No. 21-1461V, 2024 WL 1299576 (Fed. Cl. Spec. Mstr. Feb. 27, 2024); *Tappendorf v. Sec'y of Health & Hum. Servs.*, No. 20-1592V, 2024 WL 1299566 (Fed. Cl. Spec. Mstr. Feb. 23, 2024); *Sturdevant v. Sec'y of Health & Hum. Servs.*, No. 17-172V, 2024 WL 1045145 (Fed. Cl. Spec. Mstr. Feb. 12, 2024); *Kleinschmidt v. Sec'y of Health & Hum. Servs.*, No. 20-680V, 2023 WL 9119039 (Fed. Cl. Spec. Mstr. Dec. 5, 2023).

decisions. Thus, I will calculate the mileage costs using the IRS business rates that Petitioner proposes.

However, I also find that Petitioner has failed to provide sufficient evidence to warrant the reimburse of costs (including mileage) related to the PCP visit on September 30, 2022, or trips to the CryoSpa in July and July 2023. She has failed to show how the treatment she received during these visits were reasonable and necessary to diagnosis or treat her SIRVA. *See* Section 15(a)(1)(B). This, I will reimburse only the remaining mileage costs – for a total amount of $61.27.

### Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $65,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.[16] I also find that Petitioner is entitled to $61.27 in actual unreimbursable expenses.**

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $65,061.27, to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of Court is directed to enter judgment in accordance with this Decision.[17]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[16] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[17] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.